**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARON A. WYATT** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:09-cv-05768** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | **Jeffrey T. Gilbert** |
| **Of the Social Security Administration,** | ) | **Magistrate Judge** |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Sharon A. Wyatt ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking review of the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act, 42 U.S.C. § 404(a). This matter is before the Court on Claimant's motion for summary judgment [Dkt.#12]. Claimant argues that the Administrative Law Judge's ("ALJ") decision denying her application for DIB and SSI benefits should be reversed and/or that the case should be remanded for further proceedings. Memorandum In Support Of Motion For Summary Judgment [Dkt.#13]. Claimant raises the following issues: (1) whether the ALJ erred in finding Claimant performed substantial gainful activity; (2) whether the ALJ failed to follow the treating physician rule; and (3) whether the ALJ failed to properly evaluate Claimant's credibility.

For the reasons set forth below, Claimant's motion is granted. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

# I.  BACKGROUND FACTS

**A.     Procedural History**

Claimant initially filed for DIB and SSI on April 15, 2005, alleging a disability onset date of March 12, 2004.  R. 107.  The Social Security Administration ("SSA") initially denied her application.  R. 141.  Claimant then filed a request for reconsideration, which the SSA denied on May 2, 2006.  R. 138-140.  Shortly thereafter, Claimant requested a hearing before an ALJ.  R. 137.

On January 3, 2008, Administrative Law Judge Arthur Cahn ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Brian Woodruff.  R. 329. Claimant testified at the hearing.  R. 330.  The ALJ conducted the hearing via teleconference from Sacramento, California, while Claimant testified from Chicago, Illinois.  R 107.  No medical or vocational experts testified live.  On March 21, 2008, the ALJ rendered a decision that Claimant was not disabled under the Social Security Act.  R. 107-118.  Specifically, the ALJ found Claimant had "engaged in substantial gainful activity since March 12, 2004, the alleged onset date" and, moreover, that "Claimant has the residual functional capacity to perform the full range of sedentary work. . . ."  R. 109-114.

Claimant then filed for review of the ALJ's decision before the Appeals Council.  R. 103.  On July 27, 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  R. 4-6.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.** **Hearing Testimony - January 3, 2008**

**1.** **Sharon Wyatt - Claimant**

At the time of the hearing, Claimant was 49 years old.  R. 331.  Claimant completed school through the 12th grade and had past relevant work experience as a filing clerk.  R. 332.  In addition to filing, Claimant's prior work experience included data entry and credit research.  *Id*.  Claimant claims she has not worked since March of 2003 or 2004.  R. 189, 332.[1]  Claimant testified that she stopped working because she "was having a lot of difficulty with [her] illness," specifically her back.  R. 332.

At the hearing, Claimant testified that pain in her back, knee, leg, and buttocks prevent her from working.  R. 332-334.  To treat her pain, Claimant visited her doctor, a surgeon, a chiropractor, a physical therapist, and a pain specialist.  R. 96-97, 338.  Claimant testified that Dr. DeLeon, her treating physician, and Dr. Singa, her treating surgeon, reviewed her most recent MRI and told Claimant that her back had deteriorated since they first began treating her.  R. 342.  To treat her back, Claimant has had steroid shots and taken pain medication.  R. 335, 338-339.  Claimant testified that the steroid shots relieved the pain for a short while but, after an hour or two, the pain would return.  R. 338-339.  Claimant also testified that the medication makes her sleepy and drowsy.  R. 335.  When Claimant takes her medication, the pain eases, but still lingers.  R. 334.

---

[1] Claimant's employer separation evaluation from the Law Bulletin Publishing Company states that Claimant stopped working on March 15, 2004.  R. 189.  Claimant testified at the hearing before the ALJ, however, that she last worked in March 2003 (R. 332) but her testimony clearly references her last job as being with the Law Bulletin Publishing Company, so Claimant likely was confused at the hearing regarding when she last worked for that employer.  Claimant's earnings reports show that she was employed by the Law Bulletin Publishing Company during 2003 and part of 2004, and that she had self-employment earnings in 2004, 2005 and 2006.  R. 149-150.  (*See* section III.A, *infra,* with respect to Claimant's reported self-employment earnings.)

Claimant's pain makes it difficult for her to lift, carry, walk, stand, or sit. R. 335, 337. Claimant testified that she cannot sit or stand for long periods of time. R. 333. When she is sitting, she feels pain from just above her belt line radiating down to her buttocks. *Id*. Claimant feels pain that is "a lot of pressure like something is going to pop." *Id*. Claimant also feels pain in her leg when she is sitting. R. 335. Sometimes Claimant feels pain that travels "through the butt down in [her] leg, and some days it is up in the middle part of the back." R. 334. Claimant can stand still for about five minutes, but she must lean against something to do so. R. 336. Claimant testified that she had problems lifting and carrying groceries except for small amounts. R. 337. Furthermore, during a 9:00 am to 5:00 pm work day, Claimant testified she must lie down five out of the eight hours. R. 338.

Claimant has made efforts to alleviate her pain. Claimant tried to lose weight to relieve the pain and has even followed diets and looked into surgery to help her lose weight though ultimately Claimant did not have surgery. R. 339. Claimant tried physical therapy to ease the pain. R. 340. Claimant went to physical therapy for two months at the time of the hearing. R. 340-341. Physical therapy relieved the pressure and pain while she was at physical therapy, but an hour or two after she came home from physical therapy, she would be in the same pain as before. R. 340-341. Claimant testified that she has made a good faith effort to do everything her doctors have asked her to do to relieve her pain. R. 341.

As a result of her pain, Claimant testified her personal life is severely limited. Claimant cannot run, jog, bowl, or skate anymore. R. 343. Claimant testified that her daughter runs errands for her, does her grocery shopping, and banks for her. *Id*. Claimant can drive, but she has not driven lately because her medication makes her drowsy. *Id*. Claimant goes to church to socialize but nowhere else. R. 344. She can no longer perform duties as an usher or

fellowshipper at her church.  *Id*.  Claimant also testified she limits her church activity because she cannot sit for long enough to participate in a full service.  *Id*.

Claimant's treating surgeon described Claimant as obese.  R. 97.  In October of 2002, Claimant weighed 231 lbs.  R. 205.  In 2003, Claimant weighed 237 lbs.  R. 203.  Later in 2003, her weight increased to 247 lbs.  R. 36.  By 2006, Claimant weighed 251 lbs.  R. 20.  In 2007, Claimant weighed 262 lbs.  R. 272.  By the time of her hearing in 2008, Claimant weighed 267 lbs.  R. 301.  Throughout this period, Claimant was between 5'5" and 5'6" inches tall.  R. 205, 301.

## C.    Medical Evidence

### 1.    Dr. Lillian DeLeon, M.D. – Treating Physician

Claimant saw Dr. DeLeon multiple times complaining of various pains.  On July 14, 2003, she saw Dr. DeLeon complaining of back pain and insomnia.  R. 277.  On July 23, 2003, she again complained of back pain.  R. 36.  On April 26, 2005, she reported pain to the left shoulder and left leg.  R. 30.  On November 3, 2005, she again complained of back pain.  R. 26.  On November 28, 2006, she saw Dr. DeLeon and reported ankle swelling.  R. 20.  On December 12, 2007, she complained of lower back pain.  R. 15.  On January 10, 2008, Claimant reported she was having trouble lifting and pain in her leg.  R. 76.  On January 22, 2008, she reported problems sitting and standing.  R. 73.  On June 23, 2008, she reported right arm pain.  R. 69.  On June 17, 2008, Claimant complained of numbness and low back pain.  R. 67.

On January 22, 2008, Dr. DeLeon completed a Multiple Impairment Questionnaire regarding Claimant and stated she diagnosed Claimant's condition as a degenerative disk at L3-L5.  R. 290.  She said Claimant had a fair prognosis.  *Id*.  She said that Claimant's pain was exacerbated by sitting and standing for too long.  R. 292.  Dr. DeLeon felt that Claimant was

capable of sitting for two hours every day and standing and walking for one hour each day. *Id*. Dr. DeLeon said it would be "necessary or medically recommended for [Claimant] not to stand/walk continuously in a work setting." R. 293. Dr. DeLeon said Claimant was able to lift and carry up to ten pounds. *Id*. She also stated that, in her opinion, Claimant was not a "malingerer." R.295

### 2. Dr. Madhaviah Singa, M.D. – Treating Surgeon

Dr. Madhaviah Singa treated Claimant starting August 29, 2003. R. 95. At that time, he reported that Claimant had tenderness in the lower back. R. 97. He reported that Claimant had trouble bending forward due to her obesity and pain. *Id*. Dr. Singa reported that Claimant's MRI showed a L2-L3 disk bulge. R. 97. Dr. Singa recommended "lower lumbar epidural steroid administration" to treat the pain as well as for Claimant to lose weight and undergo physical therapy. R. 96-97.

In a Medical Impairment Questionnaire prepared sometime after May 19, 2006, Dr. Singa again reported that Claimant had a L2-L3 disk bulge. R. 255. He diagnosed Claimant with "retrololisthesis with respect to S1 with disc bulge and mild foraminal narrowing bilaterally." R. 255. He also reported Claimant experienced pain in the back lumbar, hips, knees, and tingling in the right lower extremity. R. 256.

### 3. Radiology Findings

In addition to her visits with Dr. DeLeon and Dr. Singa, various radiologists have examined Claimant or reviewed radiological images taken of Claimant and reported their findings. On January 7, 2003, Dr. Leef examined Claimant's spine and stated that after examining Claimant's lumbar and sacral spine, he could find no definite bone or joint pathology. R. 89. On August 23, 2003, Dr. Zelch examined an MRI taken of Claimant's spine and found

disc dehydration with loss of disc height at L5-S1.  R. 88.  He also found a slight retrolisthesis with 3mm disc bulging.  *Id*.  He reported the canal diameter was adequate, but there was mild bilateral foraminal narrowing.  *Id*.  The rest of his analysis was normal.  *Id*.  On April 26, 2005, Dr. Marmo analyzed Claimant's knee because of her reported pain but found "no fractures on dislocations" in the knee.  R. 87.  He also found "[n]o significant joint or soft tissue abnormalities."  *Id*.

On December 24, 2007, Claimant again had an MRI of the lumbar spine.  R. 84.  Dr. Gorodetsky examined the MRI and found a loss of height at the L5-S1 disc space, "consistent with disc desiccation."  *Id*.  Dr. Gorodetsky also found mild disc bulges at L3-L4 and L4-L5 but "without evidence of frank disc herniation, significant central or foraminal stenosis."  *Id*.

On May 28, 2008, Dr. Corrales examined images of Claimant's lower extremities because of her pain and swelling.  R. 82.  Dr. Corrales found "intraluminal flow and wall-to-wall compression of the common femoral, superficial femoral and politeal veins."  *Id*.  He also found augmentation of flow with calf compression maneuvers but "no evidence of obstructing deep venous thrombosis."  *Id*.  Dr. Corrales examined a brain scan after Claimant complained of dizziness and headaches and found no abnormalities.  R. 81.  Dr. Corales examined images of Claimant's cervical spine because Claimant complained of neck pain radiating to her right side.  R. 80.  Dr. Corrales found "[d]egenerative changes at the C5-C6 level" and "[s]traightening of the normal cervical lordosis" but no fractures or dislocations.  *Id*.

On July 1, 2008, Dr. Javier examined an MRI of Claimant's right shoulder that was taken because Claimant complained of right shoulder pain and limited range of motion.  R. 78.  While he found "[a]bnormal signal consistent with tendinopathy of the supraspinatus tendon," he found no evidence of a tear or fracture.  *Id*.

### 4.      Physical Therapy

In a February 2003 physical therapy evaluation, Claimant reported pain in her tailbone and buttocks.  R. 38.  The physical therapist, Karen Distal, prescribed physical therapy to help alleviate the pain including doing pelvic tilts, bridging and using a hip pillow.  *Id.*  On March 17, 2003, Ms. Distal reported back to Dr. DeLeon, Claimant's treating physician, that after treating Claimant, she did not return for a follow up visit.  *Id.* at 94.

### D.      The ALJ's Decision of March 13, 2008

Following a hearing and a review of the medical evidence, the ALJ rendered a decision upholding denial of Claimant's application for DIB and SSI.  R. 107-118.  The ALJ reviewed Claimant's application under the five-step sequential analysis.  R. 109-117.  At step one, the ALJ found that "[t]he claimant has engaged in substantial gainful activity since March 12, 2004, the alleged onset date."  R. 109.  The ALJ, however, proceeded to evaluate the remaining four steps. *Id.*  At step two, the ALJ found that Claimant had two severe impairments: disorders of the back and obesity.  *Id.*  At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 414.  R.114.  At step four, the ALJ then considered Claimant's residual functioning capacity ("RFC") and found Claimant unable to perform her past relevant work.  R. 116.   At step five, the ALJ found Claimant capable of the RFC to perform the full range of sedentary work as defined in 20 CFR § 404.  R. 114.

In evaluating step one, the ALJ determined that Claimant had engaged in substantial gainful activity since March 12, 2004, the alleged onset date. R. 109.  The ALJ stated that if an individual has earned wages above a certain level set out in the regulations, it is presumed he or she has engaged in substantial gainful activity and has the ability to continue to do so.  R. 109.

While a determination that Claimant had engaged in substantial gainful activity would be sufficient to deny her request for benefits if supported by substantial evidence, the ALJ continued through the rest of the five step analysis to determine whether she was disabled. R. 109.

In evaluating step two, the ALJ found two severe impairments: disorders of the back and obesity. R. 109. The ALJ based this conclusion on a review and analysis of Claimant's medical records. Claimant's back pain was evidenced in her medical records as early as June 26, 2002. R. 110. Claimant continued to report having back pain through 2003 in visits to Dr. Streitmatter and her physical therapist, Karen Distel. R. 110-11. Claimant's treating physician, Dr. DeLeon, examined Claimant on June 14, 2003 due to complaints of back pain. R. 111. Dr. DeLeon diagnosed Claimant with back pain and obesity. R. 111. The ALJ also relied on medical records from April 26, 2005 when Claimant saw Dr. DeLeon complaining of left leg and left shoulder pain that had continued for one month. R. 111. Claimant's visits for back pain continued through 2008. R. 112. Claimant also was treated by Dr. Madhaviah R. Singa. After examining Claimant on August 29, 2003, Dr. Singa reported that she had lower lumbar tenderness and was unable to bend forward as a result of pain and obesity. R. 112. Dr. Singa treated Claimant with steroid injections. R. 112-113.

The ALJ also considered objective evidence from MRIs. The first MRI, performed on August 23, 2003, showed "disc dehydration with a loss of disc height and slight retrolisthesis with disc bulging and mild bilateral foraminal narrowing at L5-S1." R. 112. The MRI also showed normal disc configuration at remaining lumbar levels and preservation of disc height and normal lumbar vertebrae and conus medullaris. R. 112. The second MRI, performed on December 27, 2007, showed "diffused disc osteophyte complex at L5-S1 with partial effacement

of the ventral theca sac and degenerative changes with endplate edema, but no significant foraminal stenosis." R. 113. The MRI also showed mild disc bulges at L3-L4 and L4-L5 without evidence of disc herniation or significant central or foraminal stenosis. R. 113.

Next, the ALJ considered Claimant's testimony. R. 113. Claimant testified that during her former employment her symptoms kept her from performing her normal work duties, but Dr. DeLeon put her on light duty at work. R. 113. Claimant also described her problems sitting, standing, and carrying any weight. R. 113. Claimant testified that she could not perform her old job because of constant pain and medication that makes her drowsy. R. 113. Claimant further testified that treatments have not alleviated the pain and that she has had trouble losing weight. R. 113-114.

In evaluating step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the accepted impairments in 20 CFR §404. R. 114. In evaluating step four, the ALJ assessed Claimant's RFC; in doing so, the ALJ said he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." R. 114. The ALJ said this evaluation was based on the medical evidence of record, Claimant's testimony, and opinion evidence from Claimant's treating physician and treating surgeon. R. 114-116. The ALJ stated that while considering Claimant's symptoms, he was required to follow a two step process: first, the ALJ must determine whether Claimant has an underlying medically determinable physical or mental impairment that could be reasonably expected to produce Claimant's symptoms and pain; and second, once an underlying impairment has been shown, the ALJ must evaluate the persistence, intensity, and limiting effects of

Claimant's symptoms and determine the extent to which Claimant's ability to do basic work functions is limited. R. 114-115.

The ALJ analyzed Claimant's testimony in performing this two-step process and found inconsistencies in that testimony. R. 115. For example, according to the ALJ, Claimant said in her disability report that she was limited in her standing and walking but not sitting. R. 115. When Claimant testified, she reported that she could not sit for any length of time, and that she had to lie down all the time. *Id.* The ALJ also noted that her employer recorded that Claimant left her job due to knee problems, but Claimant testified she quit her job due to back pain. *Id.* Next, the ALJ observed that Claimant's testimony suggested that her weight gain was a result of her back pain, but Claimant was overweight before she reported back pain. *Id.* He further noted that Claimant testified that she last worked in March of 2003, but she had earnings for 2003, 2004, 2005, 2006, and 2007 that were above the substantial gainful activity level. *Id.*

The ALJ also found an inconsistency in Claimant's testimony about whether she could do her own grocery shopping. At one point, Claimant testified that she could carry groceries so long as they were split evenly between bags but at another point the ALJ said she testified that her daughter does all her errands including grocery shopping. *Id.* The ALJ further noted that Claimant's treatment regimen was conservative in light of her alleged pain and restricted lifestyle and concluded that the objective medical evidence does not support the disability allegation and that the medical notes from Claimant's treating physicians do not support the severity of the alleged disability. R. 115-116.

Further, in considering the opinion evidence given by Dr. Singa and Dr. DeLeon, the ALJ discounted the weight of these treating physicians' opinions. Dr. Singa opined that Claimant was limited to sitting for less than an hour a day, standing or walking less than an hour a day, and

lifting or carrying no more than ten pounds on an occasional basis. R. 115-116. Dr. Singa's diagnosis includes a disc bulge at the L2-L3, yet neither the 2003 or 2007 MRIs show disc bulges at L2-L3. R. 116. The ALJ also stated that the other radiological evidence did not support the degree of limitation Dr. Singa opined. Furthermore, the ALJ found nothing in Dr. Singa's medical notes to support the degree of limitation. R. 116.

In weighing the evidence from Dr. DeLeon, the ALJ noted that Dr. DeLeon also gave opinions on Claimant's capabilities including that she was limited to sitting two hours each day, standing or walking one hour per day, and only lifting or carrying no more than ten pounds on an occasional basis. R. 116. The ALJ thought that Dr. De Leon's treatment notes did not support the degree of limitation in her opinion. *Id.* Furthermore, the ALJ stated the objective evidence from x-rays and MRI's did not support the degree of limitation Dr. De Leon suggested. *Id.* After considering all of the evidence in the record, the ALJ found "that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual capacity assessment. . . ." R. 115.

In step four, the ALJ analyzed whether Claimant was able to perform any past relevant work. *Id.* The ALJ noted that Claimant used to work as a file clerk. R. 116. Since Claimant's duties as a file clerk required her to lift boxes, pull files, and stand or walk for the majority of the workday, the ALJ found Claimant was unable to perform her past relevant work. *Id.*

In evaluating the fifth step, the ALJ considered his assessment of Claimant's RFC and her age, education, and work experience to see if she could make an adjustment to other work. R. 116-117. The ALJ noted that Claimant was forty-four years old on the alleged disability onset

date with a high school education and an ability to communicate in English.  R. 116-117.

Considering these personal factors and "based on a residual functional capacity for the full range

of sedentary work", the ALJ found that Claimant could perform a significant number of jobs in

the national economy.  R. 117.  Therefore, the ALJ found Claimant was not disabled.  *Id.*

## II.  LEGAL STANDARDS

### A.  Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes

the Commissioner's final decision if the Appeals Council denies a request for review.  *Sims v.*

*Apfel*, 530 U.S. 103, 106-107 (2000).  Under such circumstances, the district court reviews the

decision of the ALJ.  *Id.*  Judicial review is limited to determining whether the decision is

supported by substantial evidence in the record and whether the ALJ correctly applied the correct

legal standards in reaching his decision.  *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A "mere

scintilla" of evidence is not enough.  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even

when there is adequate evidence in the record to support the decision, however, the findings will

not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion."  *Berger v. Astrue*, 516 F.3d 439, 544 (7th Cir. 2008).  If the Commissioner's

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand.  *Villano*

*v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical

review of the evidence" before affirming the Commissioner's decision.  *Eichstadt v. Astrue*, 534

F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the ALJ's findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-740 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether Claimant is engaged in substantial gainful activity; (2) whether Claimant has a severe impairment; (3) whether Claimant's impairment meets or equals a listed impairment; (4) whether Claimant can perform past relevant work; and (5) whether Claimant is capable of

performing other work. *Id.* Once a claimant has proven she cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that Claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of her motion for summary judgment: (1) whether the ALJ erred in finding that she performed substantial gainful activity; (2) whether the ALJ failed to follow the treating physician rule; and (3) whether the ALJ failed to properly evaluate her credibility.

### A. The ALJ's Conclusion That Claimant Performed Substantial Gainful Activity Is Not Supported by Substantial Evidence

Before analyzing the merits of the ALJ's determination on substantial gainful activity ("SGA"), the first issue that must be addressed is the Commissioner's argument that Claimant waived her ability to challenge the ALJ's finding of SGA at step one because the argument was not raised in her original motion for summary judgment. Claimant originally raised the issue of SGA in her complaint, within her argument that the ALJ failed to properly evaluate her credibility. Pl.'s Memorandum In Support Of Motion at 12-13 [Dkt.#13]. After the Commissioner raised the waiver issue in his response brief, Claimant responded and fully expounded her argument regarding the SGA finding in her reply memorandum. Reply Br. at 1-2 [Dkt.#16].

The Seventh Circuit in *Chicago Truck Drivers v. Century Motor Freight, Inc.*, 125 F.3d 526 (7th Cir. 1997), dealt with a similar waiver concern. The Court recognized the "settled rule that parties may not raise arguments for the first time in reply," but allowed the plaintiff to raise the argument in reply in that case since the defendant already had raised the argument in its response to the original motion. 125 F.3d at 530. In this case, as in *Chicago Truck Drivers*, the

Commissioner had the opportunity to address and attempt to rebut Claimant's SGA argument. Accordingly, since the issue was raised and the parties addressed it, it is squarely presented for decision and there is no waiver.

Now we turn to Claimant's argument that the ALJ erred in finding that she had engaged in SGA. The first step of that analysis requires the ALJ to "consider [Claimant's] work activity, if any. If [Claimant is] doing substantial gainful activity, we will find that [Claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(i). SGA is "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 414.1572(a). A claimant's work may be considered substantial even if it is part-time work or a claimant works less, gets paid less, or has less responsibility than in jobs previous to the onset of the disability. *Id*. If an ALJ finds that a claimant is performing SGA, the ALJ will find claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

In determining whether a claimant has engaged in SGA, the ALJ will consider a claimant's earnings. 20 C.F.R. § 404.1574(a)(1). The ALJ primarily will consider earnings claimant derives from work activity. *Id*. If the ALJ receives no information from claimant, claimant's employer, or others that show the ALJ should not count all of claimant's earnings, the evidence of earnings will create a presumption of SGA. *Id*; *Milton v. Schweiker*, 669, F.2d 554, 556 (8th Cir. 1982). However, the regulations "create only a presumption, and they do not relieve an ALJ of the duty to develop the record fully and fairly." *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982).

In this case, the ALJ relied on Claimant's financial records to determine whether she had earnings that showed she had engaged in SGA since the onset of her disability. R. 109, 147-155. The evidence in the record does indicate that Claimant had self-employment earnings in 2004,

2005 and 2006.  R.  149-150.  The ALJ did not address that issue at the hearing in this case, however, and Claimant argues the ALJ should have asked her additional questions at the hearing to clarify the source of Claimant's earnings if the ALJ thought that was an issue that needed to be addressed.  Reply Br. at 1-2.  Claimant maintains that she had no reason to know the ALJ would reach a finding of SGA as a threshold matter, presumably to explain why Claimant did not present her own evidence at the hearing explaining more fully her earnings during the period in question.

While the regulations state that evidence of earnings over a certain level creates a presumption of SGA, the presumption does not relieve the ALJ from the obligation of fully and fairly developing the record.  20 C.F.R. § 404.1574(a)(1); *Dugan v. Sullivan*, 957 F.2d 1384, 1390-91. (7th Cir. 1992); *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982).  In this case, the ALJ never asked Claimant about her earnings and then found she had engaged in SGA based upon her reported earnings from self-employment.  The subject of Claimant's earnings was never raised at the hearing by Claimant or the ALJ.

Relying only on reported income for a finding that a Claimant has SGA is particularly problematic with respect to a claimant who derives income from self-employment.  20 C.F.R. § 404.1575; *Dugan v. Sullivan,* 957 F.2d 1384, 1390-91 (7th Cir. 1992).   In determining whether income from self-employment constitutes SGA, the issue is not just the amount of money earned but also to what the income is attributable and what the person did to earn the income.  20 C.F.R. § 404.1575.  In fact, 20 C.F.R. § 404.1575(a)(2) recognizes that reported income is merely a starting point to analyze whether a person has engaged in substantial gainful activity.  That regulation states, "[w]e will not consider your income alone because the amount of income you

actually receive may depend on a number of different facts, such as capital investment and profit-sharing agreements." 20 C.F.R. § 404.1575(a)(2).

The regulations on self-employment also provide three tests to determine whether a claimant has engaged in SGA:

1. You have engaged in SGA if you render services that are significant to the operation of the business and receive a substantial income from the business.

2. You have engaged in SGA if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

3. You have engaged in SBA if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in §404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. §404.1575(a)(2)(i-iii). That regulation also provides that, in determining countable net income from self-employment, the SSA will "deduct the reasonable value of any significant amount of unpaid help furnished by your spouse, children or others" and will "deduct unincurred business expenses paid for by another individual." 20 C.F.R. § 404.1575(c)(1).

Here, the ALJ did not follow this self-employment analysis and fully develop the record on Claimant's SGA to determine how she earned the income in question. Without this analysis and absent any development of the record, the ALJ improperly found that Claimant had engaged in SGA since the onset of her disability. That finding is not supported by substantial evidence in the record. Moreover, the ALJ failed to build a logical bridge to his conclusion that Claimant had SGA given his reliance on self-employment income as constituting Claimant's SGA in this case in the years after she stopped working for the Law Bulletin Publishing Company. There is no evidence in the record that addresses the issues cited in the applicable regulations relating to a determination that a claimant was engaged in SGA as a consequence of self-employment. 20

C.F.R. § 404.1575. Therefore, the ALJ's determination on SGA is reversed and this matter is remanded for a more complete development of the record on this important issue. On remand, the ALJ must fully develop the record and analyze Claimant's self-employment earnings in accordance with the applicable regulations in connection with any determination of Claimant's ineligibility for benefits based on her having engaged in SGA during the relevant period.

**B.      The ALJ Did Not Reasonably Weigh Claimant's Treating Physicians' Opinions.**

Claimant complains that the ALJ failed to give proper weight to her treating physicians' opinions. In particular, Claimant argues that the ALJ should have given controlling weight to Dr. DeLeon's and Dr. Singa's opinions in light of the treating physician's rule.

While assessing the nature and severity of a claimant's impairments, it is the ALJ's responsibility to consider the value of a physician's opinion. And, "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." SSR 96-2p. In *Butera v. Apfel*, 173 F.3d 1049 (7th Cir. 1999), the Seventh Circuit listed six factors for an ALJ to consider when weighing the value of a physician's opinion including:

> (1) the nature and extent of the treatment relationship;
> (2) the degree to which the medical signs and laboratory findings support the opinion;
> (3) the degree to which the opinion takes into account all of the pertinent evidence in the record;
> (4) the persuasiveness of the opinion rendered;
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the physician.

*Id.* at 1056 (*referencing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). In *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004), the Seventh Circuit held that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Id.* at

503.  The Seventh Circuit further explained in *Wilson v. Barnhart*, 130 Fed. Appx. 42 (7th Cir. 2001), that "an ALJ may reject a treating physician's opinion if it is internally inconsistent, or inconsistent with other medical evidence in the record. . . ." *Id.* at 46 (*citing Dixon v. Massanari*, 270 F.3d 1171, 1176, 1178 (7th Cir. 2001)).

Here, the ALJ's decision to discount the treating physicians' opinions is not supported by substantial evidence.  Dr. DeLeon treated Claimant for more than five years.  R. 65-100.  She ran tests on Claimant at nearly every appointment.  R. 65-100.  While Dr. DeLeon did conclude some tests she performed on Claimant yielded normal results, she still diagnosed Claimant as having degenerative disc disease at L3-L5.  R. 290.  Dr. DeLeon said that Claimant's symptoms and functional limitations are reasonably consistent with her physical impairments.  R. 291.  She evaluated Claimant's pain as moderately severe.  R. 292.  Dr. DeLeon appraised Claimant's ability to lift or carry any weight as less than ten pounds.  R. 293.

Furthermore, the objective evidence, including multiple MRIs, supports Dr. DeLeon's diagnosis and opinion.  R. 80, 84, 88.  Multiple MRIs contain objective medical evidence of Claimant's bulging disks and other degenerative changes, narrowings and spurs in her back.  R. 290 (On January 22, 2008, Dr. DeLeon diagnosed Claimant's condition as a degenerative disk at L3-L5.); R. 88 (On August 23, 2003, Dr. Zelch found Claimant's MRI contained disc dehydration with loss of disc height at L5-S1 as well as slight retrolisthesis with 3mm disc bulging.); R. 84 (On December 24, 2007, Dr. Gordetsky examined Claimant's MRI and found a loss of height at the L5-S1 disc space and mild disc bulges at L3-L4 and L4-L5 but "without evidence of frank disc hermiation, significant central or foraminal stenosis."); R. 80 (Dr. Marmo examined Claimant's MRI and found "mild to moderate disk space narrowing at the C5-C6 level as well as small anterior and posterior spurs at this level.").

The ALJ's decision to discount Dr. Singa's opinion also is not supported by substantial evidence. As Claimant's treating surgeon, Dr. Singa examined and treated her since 2003. R. 97. After evaluating Claimant's pain and symptoms, Dr. Singa recommended treatments including steroid shots. R. 97. Dr. Singa diagnosed Claimant with a disk bulge, retrolisthesis, and bilateral mild foramic narrowing. R. 255. The notation in Dr. Singa notes that Claimant had a disc bulge at L2-L3, which the ALJ notes was not shown in either of the MRI's, together with Dr. Singha's diagnosis of "retrolisthesis with respect to S1 with disk bulge and mild foraminal narrowing bilaterally" (R.255), is not inconsistent with the entirety of the medical record that evidences multiple disk bulges and other issues with Claimant's back. While the ALJ points out that Dr. Singha's finding of a disc bulge at L2-L3 is inconsistent with the other medical evidence, he does not explain the significance of this inconsistency to a finding that Claimant is or is not disabled in light of the rest of the objective medical evidence.

To reject an uncontradicted treating physician's opinion, as the ALJ did here, the ALJ must provide "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The reasons the ALJ provided do not meet this standard. In rejecting Dr. DeLeon's opinion, the ALJ highlighted the normal or "unremarkable" test results Dr. DeLeon recorded during various treatment visits (R. 111-112) but chose to ignore Dr. DeLeon's other findings that were consistent with the objective medical evidence and her opinion that Claimant is disabled. In rejecting Dr. Singa's opinion, the ALJ took issue with Dr. Singa's mention of a disc bulge at L2-L3. R. 116. While the ALJ is correct that the other objective medical evidence does not show a disc bulge at L2-L3, the MRIs and other objective medical evidence do show multiple disc bulges, narrowing, and spurs. R. 80, 84, 88. Other than his own lay opinion, however, the ALJ

cites no medical expert or other evidence to support his decision that the two treating physicians' opinions were incorrect and not to be relied upon.

We find that the ALJ improperly rejected the treating physicians' opinions. "[A]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). The ALJ did just that here by pulling out of Dr. DeLeon's notes only his comments about "unremarkable" test results while ignoring Dr. DeLeon's diagnosis in other respects and by focusing on a statement in Dr. Singha's notes that is not necessarily inconsistent with his opinion or the entirety of the medical record. Furthermore, an ALJ cannot brush aside doctors' opinions based solely on a belief that the doctors based their opinions on a claimant's subjective complaints. *Parker v Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

The ALJ thus failed to evaluate and take into consideration the entire medical record in reaching his decision. He ignored the MRI evidence of multiple disc bulges and other related issues, and Dr. DeLeon's uncontradicted opinion that Claimant was suffering from severe back pain, based solely on his own lay evaluation of the medical record. Because the ALJ does not sufficiently explain why he rejected Claimant's treating physicians' opinions, his conclusion rejecting those opinions is not supported by substantial evidence or a logical bridge to the ALJ's conclusion. Therefore, the ALJ's decision is reversed on this issue.

**C.** **The ALJ's Determination That Claimant's Testimony Was Not Credible Is Not Supported By The Record And, Therefore, Is Patently Wrong**

Claimant argues that the ALJ improperly evaluated her credibility and that the ALJ's findings lack the support of substantial evidence. When it comes to assessing a claimant's credibility, the Seventh Circuit "affords the ALJ's credibility findings special deference. . . ." *Bell v. Apfel*, 2000 U.S. App. LEXIS 18140, at *17 (7th Cir. 2000). In evaluating a claimant's

credibility, an ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p.

An ALJ's determination concerning a claimant's credibility must contain specific reasons for the credibility determination, supported by the evidence in the record, and must be specific enough for any subsequent reviewers and Claimant to know what weight the ALJ gave Claimant's statements. *Id.* Since the ALJ is in the best position to make a determination on a witness's truthfulness and forthrightness, the court will not overturn an ALJ's credibility determination unless it is "patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

In determining Claimant's credibility, the ALJ must evaluate her claims regarding her symptoms and pain. 20 C.F.R. § 404.1529. The regulations state that a finding of a disability includes an assessment of whether Claimant's symptoms and complaints of pain are consistent with objective medical evidence and other sources of evidence. *Id.* While a claimant's subjective complaint of symptoms and pain alone will not be enough to support a disability finding (*id.*), evaluating a claimant's statements of pain in light of the objective medical evidence may be difficult since pain is not so well understood for a given individual to simply read the severity of the pain from a medical report. *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). However, an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective medical testimony.'" *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005).

Furthermore, a claimant need not establish objective evidence of the pain itself. *Duncan v. Secretary of HHS*, 801 F.2d 847, 853 (8th Cir. 1986). The ALJ must first examine whether the objective medical evidence supports a finding of an underlying medical condition. *Id.* If it does, then the ALJ must next evaluate whether the "objective medical evidence confirms the severity of the alleged pain arising from the condition" or that "the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

In evaluating Claimant's credibility in light of the evidence of record, the ALJ found that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms. . . ." R. 115. However, the ALJ also found that the objective medical evidence including treatment notes did not support the existence of a disability (R. 115) and that Claimant's subjective statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible. *Id.*

The ALJ gave six reasons for discrediting Claimant's testimony. The ALJ's conclusions as to Claimant's credibility based upon these six instances, however, do not bear scrutiny. First, the ALJ noted that Claimant testified that she was unable to stand or walk for any appreciable length of time. R. 115. Claimant also testified that she cannot sit for any length of time and that she must lie down all the time. R. 337-338. According to the ALJ, it seemed as if Claimant "had been made aware that if she could perform work while sitting, she would not be found disabled and the discourse between her and her attorney seemed to reflect this." R. 115.

The Seventh Circuit has cautioned that an ALJ should not speculate about potential reasons a claimant may have to exaggerate her physical limitations. *Knox v. Astrue*, 327 Fed. Appx. 652, 656 (7th Cir. 2009). In any event, notwithstanding the ALJ's speculation, Claimant's

disability report dated September 9, 2005 -- years before the hearing in this case in 2008 -- supports her claim that she cannot sit or stand without pain. R. 166 ("... nor can I sit too long. . . The pain that I get is unbearable when I stand.  I always need something to lean on."); 167 ("No I cannot sit for at least 2 hours, can't stand that nor can I lay down that long. . .") 170 ("I cannot stand to [sic] long nor can I sit to [sic] long.").  Therefore, Claimant's testimony at the hearing was entirely consistent with her written disability report submitted to the SSA years earlier, and the ALJ's finding that Claimant's hearing testimony was manufactured has to be considered in that context.  Under these circumstances, the ALJ's conclusion that Claimant was coached to testify as she did during the hearing because she knew that she would not be found to be disabled if she could work while sitting is pure speculation and, as such, patently wrong without a firmer articulated footing by the ALJ other than that "the discourse between her [Claimant] and her attorney seemed to reflect this."  R.115.

Second, the ALJ noted that Claimant testified that she had been placed on light duty at work, but had to quit when she returned to her regular filing duties due to back pain.  The ALJ said, however, that the evidence in the record from her former employer states she quit due to knee pain.  R. 115.  That is not true.  The evidence in the record shows Claimant complained of both knee and back pain at the time she stopped working and, indeed, throughout the course of her medical treatment, starting as early as 2002.  R. 15, 20, 23, 26, 30, 33, 36, 40, 42, 89, 189, 215.  Furthermore, Claimant did not say that her sole reason for quitting her job was knee pain; she said only that she was experiencing knee pain around the time she quit.  R. 189**.**  The reason for Claimant's separation from employment, according to her employer, was that "[h]ealth problems would cause her to have a lot of time off."  *Id.*  Therefore, the ALJ's conclusion that

Claimant lied about why she left work is not supported by the record and is, under these circumstances, patently wrong.

Third, the ALJ stated "Claimant's testimony appeared to suggest that her weight gain was largely a result of her back condition when the record reveals that Claimant was well over two hundred pounds well before her reported back pain." R. 115. But Claimant testified only that she thought her "weight gain hurts [her] back," not that she thought her weight gain came as a result of her back pain. R. 340. Claimant clearly was confused during the testimony the ALJ cites as misleading. When asked whether she saw a relationship between her weight gain and her back pain, Claimant first asked for the question to be repeated, and then asked again for clarification about what the ALJ meant by any "relationship" between her weight and back pain. R. 340. The ALJ then asked, "Do you think your weight hurts your back?" Claimant responded, "It has a lot to do with it also." *Id.* Accordingly, Claimant did not say what the ALJ says she said as a basis for the ALJ's conclusion that she was not credible on this point. Instead, she said the opposite: that her weight gain hurts her back. R. 340. Claimant's testimony is not inconsistent with the record evidence that she went from 231 pounds in October 2002 to 267 pounds at the time of her hearing in 2008. R. 205, 203, 36, 20, 272, 301 (tracking Claimant's weight by date). Under these circumstances, therefore, the ALJ's finding that Claimant was incredible on this issue is patently wrong.

Furthermore, the ALJ highlights key support for Claimant's pain: her obesity. Failure to consider the importance of a contributing factor such as obesity is neglect on the ALJ's part. *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011). The Seventh Circuit, in *Martinez*, highlighted the need to consider a claimant's disabilities in the aggregate. *Id.* at 698-99. The appellate court held that "the failure to consider the bearing of [Claimant's] extreme obesity" in

relation to Claimant's other complaints of pain was the ALJ opinion's "gravest error." *Id*. at 698. Similarly in *Parker v. Astrue*, the Seventh Circuit again criticized the ALJ for neglecting to consider the effect of the claimant's other conditions on her chronic severe pain. 597 F.3d 920, 923 (7th Cir. 2010). In fact, the ALJ's "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error." *Id*. Here, the ALJ considered Claimant's weight and her steady weight gain in only a glancing fashion and neglected to evaluate the effect Claimant's obesity had on her back pain and disability.

Fourth, Claimant testified that the last time she worked was in March of 2003, but the ALJ took issue with her credibility since the ALJ said her earnings report includes earnings in 2004, 2005, 2006, and 2007. R. 115. The earnings report, however, actually shows no earnings in 2007 (R. 115, 150), and shows that Claimant last worked in data entry at the Law Bulletin Publishing Company in 2004, not 2003. R. 189. It is unclear why Claimant stated during the hearing that she last worked in 2003 as opposed to 2004, when the objective evidence shows she quit working for the Law Bulletin Publishing Company. Since Claimant's work history and when she left the Law Bulletin is objectively verifiable, however, it is not clear that Claimant meant to mislead here.

Further, whether or not Claimant understood the ALJ to be asking about self-employment between the time she stopped working as a Law Bulletin employee and the date of the hearing is completely unclear in the record. The ALJ made no attempt to clarify his question or inquire further about the supposed inconsistency he saw between Claimant's testimony and the record of her earnings including from self-employment. Under these circumstances, the ALJ's conclusion that Claimant's testimony about the last time she "worked" is misleading is not supported by substantial evidence and, under these circumstances, is patently wrong.

Fifth, the ALJ noted that Claimant contradicted herself at the hearing by testifying at one point that she only could carry grocery bags if the bagger at the grocery store did not overload the bags, but later Claimant testified that her daughter did all of her errands including grocery shopping.  R. 115.  Claiming that this portion of Claimant's testimony is contradictory is an overstatement.  The ALJ made no attempt to clarify any number of factors that could explain any possible inconsistencies.  For example, there was no attempt to clarify the timeframe for Claimant's statements.  There was no attempt to ascertain whether Claimant shopped for small amounts of groceries while her daughter shopped for larger amounts.  Claimant's statements are not necessarily inconsistent.  Furthermore, both treating physicians supported Claimant's statements that she could only carry small amounts of weight.  R. 258, 321.  Accordingly, under these circumstances, the ALJ's conclusion that Claimant sought to mislead here with a consequential bearing upon her overall credibility is patently wrong.

Sixth, the ALJ opined that Claimant's treatment regime was conservative in light of the pain Claimant alleged and her restricted lifestyle.  *Id*.  But, the record contains an ample amount of objective evidence to support Claimant's and the treating physicians' claims of a disability.  Claimant reported severe back pain over six years.  R. 15-46, 65-76.  Multiple MRIs contain evidence of Claimant's back problems:

- "There is mild to moderate disk space narrowing at the C5-C6 level as well as small anterior and posterior spurs at this level."  R. 80.
- "There is a loss of the normal T2 signal height at the L5-S1 disc space, consistent with disc desiccation. . . .  At L5-S1, there is a diffuse disc material and osteophyte complex extending into both paracentral locations. . . . Mild disc bulges are seen at L3-L4 and L4-L5. . . ." R. 84.
- "At L5-S1 there is a disc dehydration with loss of the disc height.  There is a slight retrolisthesis with 3 mm disc bulging. . . .  There is mild bilateral foraminal narrowing."  R. 88.

To the extent this finding by the ALJ is meant to bear on his conclusion that Claimant lacked credibility, the ALJ "cannot disbelieve [Claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). Treating physicians are in the "best position to see the big picture" regarding Claimaint's disability. *Biggs v. Apfel,* 2000 U.S. Dist. LEXIS 13430, at *21 (N.D. Ill. 2000). Furthermore, an ALJ is not free to come to his own conclusions regarding a claimant's test results or symptoms and should not "practice medicine." *Id.* at *21-22. While Claimant's treatment may seem conservative, her treating physicians did not express any concern that Claimant was exaggerating her pain. In fact, both treating physicians are of the opinion that Claimant is disabled, and neither physician expressed concerns about a light treatment regimen in comparison to her pain. R. 290-297, 318-324. Further, neither treating physician was of the opinion that Claimant is a "malingerer." R. 260, 295. "As countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to discover what is causing her pain that she is faking it." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

Claimant's subjective claims of symptoms and pain cannot be discounted simply because the ALJ feels her pain is not severe enough. Pain is subjective and reports of chronic pain cannot be ignored. Claimant complained of severe pain for years as recorded in her physicians' treatment notes. R. 65-100. The objective medical evidence supports Claimant's subjective complaints. R. 80, 84, 88. In fact, "[p]atient self-report. . . is perhaps the most straightforward and appropriate means of determining pain severity . . . ." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006).

Accordingly, on the totality of the record and Claimant's testimony, and the ALJ's failure to adequately address and explain his reasons for rejecting Claimant's credibility, we find that the ALJ's credibility findings are not supported by substantial evidence and, in fact, in many cases are refuted by the evidence. Therefore, the ALJ's conclusion that Claimant was not credible is patently wrong based on the reasons he offered for his conclusion. Accordingly, the ALJ's decision regarding Claimant's credibility is reversed.

## IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary judgment is granted. The ALJ's decision is reversed as set forth in sections III.B and III.C of this Opinion. As to section III.A of this Opinion, the ALJ's decision is reversed and remanded to the Commissioner for further proceedings consistent with this Opinion.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  June 1, 2011